IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CR-171-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| COREY TYON WINSTEAD, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant's motion to suppress evidence under the Fourth Amendment's exclusionary rule. (DE 19). This matter was referred to United States Magistrate Judge Robert B. Jones, Jr., pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), for conduct of an evidentiary hearing and a recommended disposition of defendant's motion. Evidentiary hearing was held September 3, 2015. On December 3, 2015, the magistrate judge entered a memorandum and recommendation ("M&R") (DE 28), wherein it is recommended that defendant's motion be granted in part and denied in part. Defendant timely filed objections to the M&R, and the government's time for response has expired. The issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge as its own and denies defendant's motion.

**STATEMENT OF THE CASE**

On May 27, 2015, defendant was named in a one-count indictment charging him with possession with intent to distribute 28 grams or more of cocaine base ("crack cocaine"), in violation of 21 U.S.C. § 841(a)(1). A warrant for defendant's arrest issued on May 27, 2015, and defendant subsequently was arrested on June 10, 2015. On July 23, 2015, defendant filed the instant motion

to suppress evidence obtained during and as a result of a traffic stop in Wilson, North Carolina. The evidence defendant moves to suppress includes, white crumbs in and around defendant's mouth, a motel key card to room 131 at the Heart of Wilson Motel, statements by defendant and another about defendant occupying room 131 at the Heart of Wilson Motel, and crack cocaine found in room 131.

Defendant argues that the evidence should be excluded because the traffic stop was unlawful, requiring exclusion of all evidence obtained therefrom under the "fruit of the poisonous tree" doctrine. In addition, defendant contends that the officer initiating the stop unlawfully prolonged the stop, searched defendant's mouth without probable cause, and frisked his person without reasonable suspicion of criminal activity. Finally, defendant argues that the warrant authorizing law enforcement to search his motel room issued without probable cause. In response, the government argues that the traffic stop was lawful, where the officer observed the vehicle violate several traffic laws prior to the stop. In addition, the government argues that the officer possessed the necessary reasonable suspicion to justify both prolonging the stop and frisking defendant. Finally, the government contends that, in all events, the warrant was supported by probable cause.

An evidentiary hearing was held before the magistrate judge on September 3, 2015, where the court received into evidence the application for search warrant and a log of all calls to police concerning the Heart of Wilson Motel, among other things. M&R entered on December 3, 2015. The M&R recommends that defendant's motion be granted in part and denied in part. Specifically, the M&R recommends that the evidence obtained as a result of the officer's search of defendant's mouth and subsequent frisk be suppressed. The magistrate judge reasons that the officer searched defendant's mouth without probable cause and removed an innocuous item from defendant's pocket, the key card to room 131, despite the fact that during the officer's conduct of the frisk the key card's

2

criminal nature was not immediately apparent. However, the M&R ultimately recommends that defendant's motion be denied as to the crack cocaine found during the execution of the search warrant. The magistrate judge reasons that, even without the key card to room 131, law enforcement still would have located defendant's room at the Heart of Wilson Motel under the inevitable discovery doctrine based on other evidence obtained independent from the unlawful searches of defendant's person. The magistrate judge recommends that the court conclude that the lawfully-obtained information contained in the search warrant was sufficient to create probable cause to search room 131. Defendant's timely objections followed.

## FACTUAL BACKGROUND

On June 14, 2014, a vehicle driven by Pansey Nelson ("Nelson") made a wide right-hand turn out of Heart of Wilson Motel, with the left side of the vehicle crossing the center line in the process. Crossing the center line is a traffic infraction, in violation of N.C. Gen. Stat. § 20–146(d)(1). Nelson's wide turn forced Wilson Police Department Captain Keith Pendergrass ("Pendergrass"), a 24-year veteran of the Wilson Police Department who was driving in the same lane, to slow his rate of travel. Pendergrass followed the vehicle for several blocks, observing it stop at a steady green light for 10 to 12 seconds and also observing it stop at a stop sign for an extended period of time, viewed in light of the fact that there was little to no traffic. Eventually, Pendergrass initiated a traffic stop resulting from a combination of the driver's behavior and previous violation of § 20–146(d)(1). Pendergrass later testified that the driver's conduct was consistent with that of an impaired driver.

After initiating the stop, while approaching the car from the rear, Pendergrass shone his flashlight into the car's rear window and observed two occupants: a female driver, Nelson, and a

3

male passenger. Pendergrass also noticed the male passenger bringing his hand to his mouth. Pendergrass spoke with Nelson and took her credentials. During this time, Pendergrass noticed that the car's passenger was avoiding eye contact with him and looking in the other direction. Pendergrass attempted to engage the passenger and asked him if everything was alright. In response to Pendergrass's question, the passenger turned to face Pendergrass. Pendergrass immediately identified the passenger as defendant, who Pendergrass knew had been arrested on cocaine-related offenses in the past. Pendergrass observed that defendant appeared to be grinding his teeth, and that defendant had a white powder substance around his lips.

Pendergrass had Nelson step out of the vehicle. Either on her own or in response to a question posed by Pendergrass, Nelson told Pendergrass that she and defendant had just left the Heart of Wilson Motel, where she had picked defendant up. Pendergrass then asked Nelson to wait in front of the vehicle and moved his attention to defendant. When he returned to the car, Pendergrass observed defendant still grinding his teeth. Suspecting, at that time, defendant was ingesting drugs, Pendergrass ordered defendant from the vehicle. Holding a flash light, Pendergrass ordered defendant to open his mouth. Defendant complied, and Pendergrass observed "crumbs" on defendant's tongue. Pendergrass then placed defendant in handcuffs and performed a frisk of defendant's person. During the search, Pendergrass located a flat key card in defendant's pocket, which he later learned was the key to room 131 at the Heart of Wilson Motel.

Following Pendergrass's discovery of the key card defendant became visibly nervous and began sweating. Pendergrass continued to press defendant for more information, and eventually defendant informed Pendergrass that the he was staying at the Heart of Wilson Motel and that the key was for his room, 131. Pendergrass then relayed the information, beginning with the

4

information supporting the initial traffic stop, to Wilson Police Department Detectives Jason Corprew ("Corprew") and Chelsea Sanders ("Sanders").

After receiving the information from Pendergrass, Corprew and Sanders stopped at the Heart of Wilson Motel. Corprew spoke with the motel's night clerk, who provided the officers with the motel's manifest. In addition, the night clerk told the officers that defendant had rented room 131 and provided the officers with a registration card for that room, which included a copy of defendant's photo identification, as well as other information. At that time, Corprew went to room 131, where he stood outside while Sanders left to obtain a search warrant for the room. Sanders swore out a search warrant, containing the information relayed to her by Pendergrass, which was signed by a North Carolina magistrate judge and executed that night. The affidavit in support of the search warrant provided:

> On June 14, 2014 members of the Wilson Police Department, to include Captain K. Pendergrass, conducted a traffic stop on a vehicle for driving erratically on Jackson Street. Captain K. Pendergrass observed the vehicle leave the Heart of Wilson and observed the driver to turn onto Jackson Street before being observed driving erratically. [Defendant] was the passenger of the vehicle. Officers observed [defendant] make sudden and quick movements where [defendant] was observed placing something inside his mouth and failing to obey Officers attempt to stop [defendant's] actions. Officers of the Wilson Police Department removed [defendant] from the vehicle and observed [defendant] to have small residue amounts of what appeared to be cocaine around his mouth and on his tongue.
>
> When questioned about the substance [defendant] did not comply with the questions and refused to answer the questions being asked by Officers. Officers conducted a search of [defendant's] person and located a Heart of Wilson room key on his person.
>
> Officers of the Wilson Police Department began to question [defendant] about the room key and [defendant] initially stated that he did not know anything about the room key. When being asked further about the room [defendant] became extremely nervous and verbally abusive stating that Officers were not and did not have the right to search the room.

> Officers spoke with the driver, identified as Pansie [sic] NELSON. NELSON advised Officers that [defendant] was staying at a room located inside the Heart of Wilson. Officers asked NELSON what room [defendant] was staying in and NELSON advised 131.
>
> Detective C.J. Sanders responded to the Heart of Wilson and spoke with management and was advised that [defendant] rented room 131 on 6-13-2014 in his name. Management was able to show Detective C.J. Sanders a photocopy of [defendant's] identification.
>
> Applicant is familiar with [defendant] and [defendant's] criminal history and reputation where [defendant] is known for being a chronic narcotic offender within the City of Wilson.

(Search Warrant, Def.'s Hearing Ex. 9). Upon execution of the warrant, law enforcement found 53 grams of powdered cocaine and 13 grams of crack cocaine.

## COURT'S DISCUSSION

A.  Standard of Review

When specifically objected to, the district court reviews de novo those portions of the M&R applying law to facts. 28 U.S.C. § 636(b). Absent a specific and timely filed objection, the court reviews the M&R's application of law to fact only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). By contrast, the district court "review[s] the magistrate judge's . . . findings of fact for clear error." Stanley v. Hejirika, 134 F.3d 629, 633 (4th Cir. 1998), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

6

B. Analysis

Defendant lodges five objections to the M&R. In particular, defendant contends that the magistrate judge 1) improperly weighed Pendergrass's testimony that Nelson's car crossed the center line, 2) gave undue weight to Pendergrass's characterization of defendant's behavior during the course of the stop as "evasive," 3) improperly recommends that the court find Pendergrass's traffic stop lawful, where Nelson broke no traffic regulations, 4) improperly recommends that the court conclude Pendergrass possessed the necessary reasonable suspicion to extend the traffic stop, in light of United States v. Williams, 808 F.3d 238 (4th Cir. 2015), and 5) in any event, improperly recommends that the court uphold the warrant solely on the basis of the untainted evidence. The court addresses each objection in turn.

1. Factual Objections

Defendant's first two objections attack the magistrate's findings of fact and credibility determinations. Defendant first suggests that Pendergrass's lone justification for stopping Nelson, a wide turn out of the Heart of Wilson Motel during which her vehicle crossed the center line, was manufactured solely to justify the stop. In support of his position, defendant directs the court to Pendergrass's supplemental investigative report, dated June 20, 2014, which does not mention Nelson's car crossing the center line. (DE 19-1). Reviewing the magistrate's findings of fact and credibility determination for clear error, the court finds none. The investigative report notes that Nelson made a "wide turn" out of the Heart of Wilson Motel parking lot. (Id.). At the suppression hearing, Pendergrass elaborated on the specifics of that "wide turn," testifying that he originally though Nelson was going across the street before she turned her car back in front of him, crossing the center line in the process. The magistrate judge had the opportunity to evaluate Pendergrass's

7

credibility and assess the veracity of his statements. In light of the evidence of record, the court will not disturb the magistrate judge's proposed findings of fact.

On his second objection, defendant contends that the magistrate judge improperly concluded that he was being "evasive" during the traffic stop, arguing that there is nothing "per se evasive" about avoiding eye contact with an officer "particularly when [an] individual has not yet been addressed by the officer who stopped the car." (Def.'s Objs., DE 29, 3). However, at the suppression hearing, Pendergrass testified that defendant appeared to be actively avoiding eye contact by looking away. (Suppression Tr., DE 27, 20:18–25). The evidence of record supports the magistrate's proposed finding of fact.

Moreover, defendant's reliance on United States v. Massenburg, 654 F.3d 480, 489 (4th Cir. 2011), is misplaced. In Massenburg, the defendant refused to make eye contact with an officer when addressed by the officer directly and subsequently was frisked, with the defendant's lack of eye contact serving as the basis for that frisk. See id. The court held that reasonable suspicion did not exist, noting that, although nervousness generally is a relevant consideration in the reasonable suspicion analysis, the defendant's failure to make eye contact when addressed directly could be merely a show of respect. Id. at 489–90. The court went on, however, and reaffirmed an earlier holding that evasive or nervous behavior still may form the basis of an officer's reasonable suspicion. Id. at 490 (citing United States v. Mayo, 361 F.3d 802, 806 (4th Cir. 2004)). Defendant's actions here are distinguishable from the Massenburg defendant's actions. In particular, defendant did not lower his eyes out of respect after being addressed directly by Pendergrass. Rather, as Pendergrass testified, defendant behaved in an avoidant manner prior to being addressed directly.

8

(Suppression Tr., 20:18–25). Accordingly, the court finds no clear error in the magistrate's proposed findings of fact.

2. Lack of Probable Cause to Stop the Vehicle

Third, defendant argues that Pendergrass lacked probable cause to stop the vehicle. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "Because an automobile stop is a seizure of a person, the stop must comply with the Fourth Amendment's requirement that it not be unreasonable under the circumstances." United States v. Wilson, 205 F.3d 720, 722–23 (4th Cir. 2000) (en banc) (internal quotations omitted). "As a result, such a stop must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." Id. (internal quotations omitted). "When an officer observes a traffic offense–however minor–he has probable cause to stop the driver of the vehicle." United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993).

Defendant essentially argues that, because the magistrate erred in finding that Nelson crossed the center line when leaving the Heart of Wilson Motel, he also erred in recommending that the court find the stop lawful. As explained above, the magistrate's proposed finding as to the precise trajectory of Nelson's turn is not clearly erroneous and will not be disturbed. Thus, where Nelson's conduct was in violation of N.C. Gen. Stat. § 20–146(d)(1), probable cause existed to stop the car and defendant's objection must be overruled.

3. Lack of Reasonable Suspicion to Extend the Traffic Stop

Fourth, defendant argues that Pendergrass lacked reasonable suspicion to extend the stop beyond its initial, lawful purpose. In particular, defendant argues that none of the facts and

9

circumstances attendant to the stop suggest that his behavior was likely to be indicative of more sinister activity. Once the lawful basis for a traffic stop has concluded, the stop cannot be extended absent consent of the driver or articulable reasonable suspicion of criminal activity. See Williams, 808 F.3d at 245–46.

The M&R recognizes a number of factors which, it recommends, support the conclusion that Pendergrass had reasonable suspicion. Those factors include: Nelson's car leaving the Heart of Wilson Motel, defendant's hand going to his mouth as Pendergrass approached the vehicle, defendant avoiding eye contact with Pendergrass, defendant grinding his teeth and chewing during the stop, Pendergrass's belief that defendant had cocaine residue around his mouth, and that defendant previously had been arrested for cocaine use. In reviewing these factors, the court is to employ a "totality of the circumstances" analysis, rather than a "divide-and-conquer" analysis. Id. at 247. Thus, the identified factors, in combination, must serve to isolate defendant's conduct from that of a substantial portion of the law-abiding citizenry. See United States v. Digiovanni, 650 F.3d 498, 513 (4th Cir. 2011); see also, e.g., Williams, 808 F.3d at 247.

The court concludes that the factors identified by the magistrate judge, taken in concert, are a sufficient basis for reasonable suspicion to justify extending the traffic stop. Defendant, a known cocaine user, was detained after a car in which he was a passenger was seen leaving the Heart of Wilson Motel, a location that had generated a not-insubstantial number of drug or drug related police calls over the year preceding defendant's arrest. (Call Log, Gov't's Hearing Ex. 2). After Nelson was stopped, Pendergrass observed defendant behave in an evasive manner, turning away from him. Defendant's evasiveness occurred after he was observed placing something in his mouth and grinding his teeth. Notably, Pendergrass's testimony suggests that defendant was not openly

10

chewing whatever he had placed in his mouth, but, rather, was grinding his teeth so as to not be noticed. Subsequently, when Pendergrass addressed defendant directly, he observed white residue around defendant's mount, which he believed to be cocaine. These facts, viewed holistically, isolate defendant from a substantial portion of law abiding travelers.

Defendant argues that his presence at the Heart of Wilson Motel is not a sufficient basis to create reasonable suspicion, where the Heart of Wilson Motel had generated a number of police calls, only a handful of which had been drug-related. However, with regard to the drug-related calls, the court defers to Pendergrass's experience in evaluating the relative number of calls generated at the Heart of Wilson Motel as compared with the surrounding community. Moreover, the presence or absence of drug-related police responses to an area does not necessarily mean that the area is not known for drug activity. In any event, the crux of the analysis is not the number of times police responded to the Heart of Wilson Motel on drug-related issues, but, rather, its status in the Wilson drug community taken in connection with defendant's user status.

Relatedly, defendant argues that his hand-to-mouth motion, and subsequently-observed chewing activity, only suggests that he was eating something. However, again, defendant views the facts in isolation. Pendergrass observed defendant place something in his mouth while on his approach to the car. Later, Pendergrass observed defendant facing away from him, grinding his teeth throughout the stop. Finally, when defendant, a known cocaine user, faced Pendergrass, the officer observed a white residue around his mouth. This progression of events, beginning with defendant's attempts to conceal his consumption of an unspecified object and leading up to Pendergrass's subsequent identification of defendant, a known cocaine user, with white residue around his mouth, taken together with Pendergrass's many years of experience is more than

11

sufficient to create reasonable suspicion to prolong the stop. Moreover, although defendant now characterizes his action as simple chewing, as noted previously, Pendergrass observed defendant grinding his teeth, an action not normally associated with consumption of, for example, a powdered doughnut. Thus, defendant's fourth objection is without merit.

### 4. Validity of the Warrant

Fifth, defendant argues that, because the magistrate recommends the evidence obtained from Pendergrass's search of his mouth and subsequent frisk be suppressed, the warrant itself, the affidavit in support of which partially was based on that evidence, is invalid and thus the evidence obtained from his room at the Heart of Wilson Motel must be suppressed. As an initial matter, the magistrate's recommendation regarding suppression of the evidence obtained after Pendergrass's search of defendant's mouth, which includes defendant's motel key, as well as defendant's nervous reaction to Pendergrass's questions about his stay at the Heart of Wilson Motel, is unobjected to. The court has independently reviewed the magistrate judge's recommendation and perceives no clear error as to that issue. Minnesota v. Dickerson, 508 U.S. 366, 375 (1993) (the "incriminating character" of items seized during the course of a Terry frisk must be "immediately apparent"); see also Wong Sun v. United States, 371 U.S. 471, 485 (1963) (holding that statements "deriv[ing] immediately" from an unlawful search are excluded as fruit of the poisonous tree).

"The inclusion of tainted evidence does not invalidate a search warrant if enough untainted evidence supports it." United States v. Wright, 991 F.2d 1182, 1186 (4th Cir. 1993). A search warrant may issue where "given all the circumstances set forth in the affidavit . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v.

12

Gates, 462 U.S. 213, 238 (1983). "Sufficient information must be presented to the magistrate to allow for the exercise of independent judgment; the magistrate cannot simply ratify the conclusions of others." United States v. Lalor, 996 F.2d 1578, 1580–81 (4th Cir. 1993). Here, defendant moves to exclude the evidence obtained as a result of the warrant. However, even if the warrant improperly was issued, because the exclusionary rule is a tool to discourage unreasonable police behavior, the evidence need only be suppressed if it violates the so-called "good faith" exception to the warrant requirement. United States v. Leon, 468 U.S. 897, 919–21 (1984). That is, evidence obtained from a subsequently invalided search warrant need only be suppressed if "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Leon, 468 U.S. at 926; Lalor, 996 F.2d at 1583.

However, there are four circumstances where the Leon "good faith" exception will not apply. These follow naturally from Leon's formulation of the rule, and include: 1) if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known to be false except for his reckless disregard of the truth; 2) if the issuing magistrate wholly abandoned his judicial role, 3) if the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or 4) if under the circumstances of the case the warrant is so facially deficient, for example in failing to particularize the place to be searched or things to be seized, that the executing officer cannot reasonable presume its validity. United States v. Doyle, 650 F.3d 460, 467 (4th Cir. 2011). The only basis implicated by defendant's objections is the third exception, lacking in indicia of probable cause.

13

Assuming, without deciding, that the affidavit with the illegally obtained information excised was insufficient to support the issuance of a warrant, the court concludes that the officers still could have had a good faith belief in its validity, even without the suppressed evidence. The warrant was obtained to search for evidence of N.C. Gen. Stat. § 90–95(a)(3), possession of a controlled substance. Here, defendant was known to have possessed controlled substances in the past; was seen leaving the Heart of Wilson Motel, known for its involvement in Wilson's narcotics community; and Pendergrass believed he observed defendant ingest cocaine during the course of the traffic stop. This information is sufficient to invest in the officers executing the warrant a good-faith belief in the existence of probable cause to search defendant's motel room. Although the nexus between defendant's drug use and the Heart of Wilson Motel could be stronger, Pendergrass's familiarity with defendant, which he characterizes as an immediate recall of defendant's identity and criminal history, suggests a history of repeated contacts and knowledge about the quantity and type of drugs typically used by defendant. That background, combined with the Heart of Wilson Motel's place in Wilson's narcotics community, is sufficient to create in the officers executing the warrant a good faith belief as to the existence of probable cause.

This conclusion is strengthened by the Fourth Circuit's probable cause jurisprudence. Direct evidence that drugs are located in a residence is not required when other facts and circumstances sufficiently establish probable cause for the search. United States v. Grossman, 400 F.3d 212, 214 (4th Cir. 2005). For example, the implication that drug traffickers store drug-related evidence in their residences contributes to a determination of probable cause. United States v. Williams, 548 F.3d 311, 319 (4th Cir. 2008). Here, Pendergrass's familiarity with defendant as a "chronic narcotics user," in concert with the fact that defendant had rented a room in a place known for its

14

involvement with the narcotics community and Pendergrass's belief as to defendant's possession of cocaine at the time he stopped Nelson's car, suggests that the officers had a good faith belief that defendant had more cocaine in his room and properly relied on that belief in executing the search warrant. Accordingly, defendant's objection is overruled.

## CONCLUSION

Based on the foregoing reasons, upon de novo review of the portions of the M&R to which specific objections were raised, and considered review of those portions to which no such objections were made, the court ADOPTS the recommendation of the magistrate judge as its own. Defendant's motion to suppress (DE 19) is DENIED. The clerk of court is DIRECTED to schedule arraignment in this matter consistent with the court's July 27, 2015, order continuing same.

SO ORDERED, this the 4th day of February, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge